UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NICHOLAS PAUL VACANTI,

                                                       Plaintiff,                Case # 18-CV-368-FPG

v.                                                                         DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                                                   Defendant.

## INTRODUCTION

Plaintiff Nicholas Paul Vacanti brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his application for Disability Insurance Benefits ("DIB") under Title II of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. § 405(g).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 18. For the reasons that follow, the Commissioner's motion is GRANTED, Vacanti's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In October 2016, Vacanti applied for DIB with the Social Security Administration ("the SSA"). Tr.[1] 71. He alleged disability since May 2016 due to depressive disorder, panic attacks, chronic sleep impairment, anxiety, memory impairment, and post-traumatic stress disorder ("PTSD"). Tr. 71-72. In September 2017, Administrative Law Judge Mary Mattimore ("the ALJ") held a hearing at which Vacanti and a vocational expert ("VE") testified. Tr. 27. On

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 6.

October 19, 2017, the ALJ issued a decision finding that Vacanti is not disabled. Tr. 13-23. On January 24, 2018, the Appeals Council denied Vacanti's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

### II. Disability Determination

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of

impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

# DISCUSSION

## I. The ALJ's Decision

The ALJ analyzed Vacanti's claim for benefits under the process described above. At step one, the ALJ found that Vacanti had not engaged in substantial gainful activity since the alleged onset date. Tr. 15. At step two, the ALJ found that Vacanti has the following severe impairments: depressive disorder, panic attacks, chronic sleep impairment, anxiety, and PTSD. Tr. 16. At step three, the ALJ found that his impairments did not meet or medically equal any Listings impairment. *Id.*

Next, the ALJ determined that Vacanti retains the RFC to perform work at all exertional levels with several non-exertional limitations. Tr. 18. At step four, the ALJ found that Vacanti is capable of performing his past relevant work as a laundry laborer. Tr. 21. Accordingly, the ALJ concluded that Vacanti is not disabled. Tr. 21-22.

## II. Analysis

Vacanti argues that the ALJ's decision is erroneous on three grounds, which the Court addresses below.

### a. Lay Interpretation of Medical Record

Vacanti first argues that the ALJ failed to explain how she crafted the RFC based on the medical opinion evidence. Based on that failure, Vacanti surmises that the ALJ actually relied on her own lay interpretation of the medical record. *See* ECF No. 11-1 at 12-14.

Contrary to Vacanti's argument, the ALJ adequately explained the basis for the RFC. While an ALJ's discussion must be sufficiently articulated to allow for "meaningful judicial review," *Muhammad v. Comm'r of Soc. Sec.*, No. 18-CV-6041, 2019 WL 2295402, at *3 (W.D.N.Y. May 30, 2019), "an ALJ's failure to fully express her reasoning does not justify remand

4

so long as the Court can glean the rationale of the decision." *Golibersuch v. Comm'r of Soc. Sec.*, No. 18-CV-976, 2020 WL 409991, at *4 (W.D.N.Y. Jan. 24, 2020). That is the case here.

The ALJ included the following non-exertional restrictions based on Vacanti's mental impairments: he can carry out simple routine tasks and make simple workplace decisions; can maintain attention and concentration for 2-3 hour blocks of time; cannot perform production rate work; can tolerate occasional changes in workplace processes, settings, and routines; can occasionally learn new tasks; cannot perform tandem or team work; and is able to perform work independently or generally isolated from other employees. Tr. 18. The ALJ adequately explained how she arrived at these restrictions.

For example, the ALJ noted the consistent evidence, both medical and non-medical, that Vacanti has difficulty in social interactions. *See* Tr. 19-21. Vacanti testified to such limitations. Tr. 50. Gregory Fabiano, Ph.D., a consultative examiner, diagnosed Vacanti with PTSD, panic disorder, and unspecified depressive disorder. Tr. 530. He found that Vacanti is moderately limited in his ability to relate adequately with others. *Id.* And A. Dipeolu, Ph.D., a state agency consultant, diagnosed Vacanti with affective and anxiety disorders and opined that he is moderately limited in his ability to work in coordination with or in proximity to others. Tr. 76, 78. The ALJ highlighted these findings when she gave Dr. Fabiano's and Dr. Dipeolu's opinions partial weight and included social restrictions in the RFC. *See* Tr. 19-20.

The ALJ also discussed the evidence that supported a finding that Vacanti's PTSD, sleep disturbances, and other mental impairments caused limitations in his abilities to attend to and concentrate on tasks. Tr. 19, 21. Dr. Fabiano found Vacanti distractible during his examination, Tr. 529, and Vacanti reported that he can sometimes forget how to perform tasks and people's names. Tr. 528. Dr. Fabiano opined that Vacanti is moderately limited in his ability to learn new

tasks and perform complex tasks, and Dr. Dipeolu concluded that he is moderately limited in his ability to maintain concentration for extended periods, understand detailed instructions, carry out detailed instructions, and complete a normal workday without interruptions. Tr. 20, 77-79, 530. Consistent with this evidence—which the ALJ cited—the ALJ restricted Vacanti to low-stress jobs with simple tasks, few workplace changes and decisions, and no assembly work. Tr. 18. The ALJ also determined that Vacanti could only maintain attention for two to three hours at a time. *Id.*

To be sure, the ALJ did not explicitly link each restriction to the record and opinion evidence supporting it. But, as a whole, her discussion is adequate enough to permit meaningful judicial review. In other words, from the ALJ's discussion of the evidence and citations to the record, the Court can glean the rationale of her decision.

Furthermore, in light of the ALJ's discussion, the Court disagrees with Vacanti's claim that the ALJ engaged in impermissible lay interpretation of the medical evidence. It is evident that the ALJ relied on the medical opinions—particularly Dr. Fabiano's and Dr. Dipeolu's opinions—to fashion the RFC. Although the ALJ did not give controlling weight to any one opinion, it is well-established that an RFC determination does not have to "perfectly correspond" with the medical source opinions cited in the ALJ's decision. *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order). Thus, the ALJ did not disregard all of the opinion evidence and proceed to draw her own inferences from treatment records and raw medical data; the restrictions the ALJ assessed are grounded in and supported by competent medical opinion.

Accordingly, the Court does not find the ALJ's decision erroneous in these respects.

    **b. Evaluation of Treating Physicians' Opinions**

Vacanti next argues that the ALJ erred, in several respects, when she assessed the opinions of treating sources William Reynolds, Ph.D., and Alicia Saldana, M.D. ECF No. 11-1 at 14-18.

First, Vacanti contends that the ALJ did not fully consider Dr. Reynolds's opinion because, in the decision, she cites only three of the restrictions that Dr. Reynolds found. *See* Tr. 20. But it is well-established that an ALJ is not "not required to mention or discuss every single piece of evidence in the record," and the "failure to cite specific evidence does not indicate that it was not considered." *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 79 (N.D.N.Y. 2005). Here, although the ALJ only explicitly noted some of Dr. Reynolds's findings, that does not mean that she only reviewed just those findings. There is no basis in the record to conclude that the ALJ only reviewed part of Dr. Reynold's opinion.

Second, Vacanti argues that the ALJ's reasons for discounting the treating sources' opinions are insufficient. Under the treating physician rule, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(c)(2); *see also Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). An ALJ may discount a treating physician's opinion if it does not meet this standard, but she must "comprehensively set forth [her] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004); *see also* 20 C.F.R**.** § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give [the claimant's] treating source's opinion.").

By way of background, Vacanti is a veteran who served in Afghanistan. Since at least 2009, Vacanti has displayed symptoms associated with PTSD and depression. Tr. 1172, 1200, 1206, 1211. These impairments appear to have been manageable in the early 2010s, as Vacanti was able to work. Tr. 995, 1162. In 2015, however, Vacanti began to report worsening symptoms.

7

Tr. 1023. In July 2015, Dr. Saldana began to provide medication management in connection with Vacanti's PTSD and anxiety. Tr. 995-96.

By May 2016, Vacanti was missing one day of work per week due to anxiety and stress. Tr. 950. He had trouble sleeping and socializing, which led to further work absences and issues. Tr. 996. In June 2016, Vacanti enrolled in residential counseling for PTSD, though he left within the month to address certain financial difficulties. Tr. 771, 933.

In September 2016, Dr. Reynolds completed a PTSD Disability Benefits Questionnaire. Tr. 740. He diagnosed Vacanti with PTSD and unspecified depressive disorder. Tr. 326-27. Vacanti's symptoms included depression, anxiety, panic attacks more than once per week, chronic sleep impairment, short- and long-term memory issues, difficulty understanding complex commands, disturbances in motivation, difficulty in establishing and maintaining work relationships, and difficulty adapting to stressful circumstances. Tr. 331. Dr. Reynolds opined that Vacanti's disorders caused "total occupational and social impairment." Tr. 328. In particular, Dr. Reynolds believed that employment would be difficult to sustain because Vacanti's symptoms would "impact [his] ability to engage in professional and effective interpersonal interactions and he could be experienced by [coworkers, supervisors, and the public] as hostile at worst or aloof or disinterested at best." Tr. 332. In addition, his symptoms "would [] undermine the quality of his productivity" and could result in avoidant behaviors, which would "affect attendance to scheduled work shifts." *Id.*

The ALJ assigned "partial weight" to the opinions of Dr. Reynolds and Dr. Saldana. Tr. 20. She found the greater limitations identified in these opinions unpersuasive because they were framed in terms of the "VA disability rating," which is different from Social Security's system, and because they were inconsistent with the VA's medical record. *Id.*

As an initial matter, the factors that the ALJ identified were appropriate to consider. In weighing a treating source opinion, the ALJ may consider its consistency with the record as a whole, 20 C.F.R. § 404.1527(c)(4), and its supportability with the source's own clinical findings. *Id.* § 404.1527(c)(3). In addition, an ALJ may discount a treating source's opinion that a claimant is "totally" or "100%" disabled, particularly where the source is applying a standard different from that of the Social Security Act. *See id.* § 404.1527(d)(1) (stating that the Commissioner is responsible for deciding whether a claimant is disabled); *Smith v. Colvin*, No. 14-CV-5868, 2016 WL 5395841, at *20 (E.D.N.Y. Sept. 27, 2016) (collecting cases and noting that opinions of disability rendered for other benefits schemes are not binding under the Social Security Act).

Vacanti nonetheless argues that the ALJ failed to proffer sufficient evidence to support the stated reasons for discounting the opinions. That is, "[t]he ALJ's citation to a lonely *four* pages of the 1285-page record in support of her sweeping assertion that the treating opinions were not supported . . . represented an impermissible picking and choosing of evidence while ignoring" evidence supportive to Vacanti. ECF No. 11-1 at 17. The Court disagrees.

It is true that an ALJ may not "selectively choose evidence in the record that supports [her] conclusions," *Meadors v. Astrue*, 370 F. App'x 179, 185 n.2 (2d Cir. 2010) (summary order), but the ALJ's decision does not run afoul of this principle. And while the ALJ did not exhaustively cite all the conflicting evidence in the record, she was not required to do so. *Lewis v. Astrue*, No. 11-CV-1163, 2012 WL 6097303, at *4 (N.D.N.Y. Dec. 7, 2012) ("The ALJ [i]s not required to mention or discuss every single piece of evidence in the record."). What the ALJ did do was explicitly recognize the conflict in the record: some evidence suggested that Vacanti could not work due to his depression and PTSD, while other evidence indicated milder limitations. *See* Tr. 19-21. On the one hand, Vacanti testified to significant anxiety and stress that precluded him from

9

adapting to a work environment. Tr. 50. And as Vacanti points out in his brief, there are medical records showing that he has depression, some concentration deficits, and difficulty in social interactions. *See* ECF No. 11-1 at 3, 6, 17. On the other hand, as the ALJ noted, there are observations of providers, clinical findings, and Vacanti's own reports of daily activities that suggest a greater degree of functioning than he claims. *See* Tr. 17-21. For example, treatment notes show fair to good concentration and fair to intact insight and judgment at appointments, Tr. 715, 757, 916, 962, and providers have observed Vacanti to be attentive and cooperative. Tr. 529, 747, 748, 757, 962. There were also the conflicting opinions from medical sources.

Thus, this is not a case where the ALJ misstated, disregarded, or misconstrued evidence to arrive at a foreordained conclusion. Instead, faced with conflicting evidence, the ALJ acknowledged the conflict and resolved it. *See McGill v. Berryhill*, No. 16-CV-4970, 2018 WL 1368047, at *10 (E.D.N.Y. Mar. 16, 2018) (stating that it is the ALJ's task to resolve genuine "conflicts in the medical evidence"). In light of the evidence cited by the ALJ—including treatment notes, Dr. Fabiano's and Dr. Dipeolu's opinions, and Vacanti's own reports of his daily activities—the ALJ reasonably arrived at an RFC supported by substantial evidence. *See* Tr. 17, 19-21. Moreover, the ALJ cannot be faulted simply for failing to cite evidence favorable to Vacanti. *See Smith v. Comm'r of Soc. Sec.*, 337 F. Supp. 3d 216, 226 (W.D.N.Y. 2018) (recognizing that an ALJ need not "reconcile explicitly every conflicting shred of medical testimony").

This argument does not justify remand.

### III. Stress-Based Limitations

Finally, Vacanti asserts that the ALJ did not adequately analyze limitations associated with his stress. ECF No. 11-1 at 18-20.

"Because stress is 'highly individualized,' mentally impaired individuals 'may have difficulty meeting the requirements of even so-called 'low-stress' jobs,' and the Commissioner must therefore make specific findings about the nature of a claimant's stress, the circumstances that trigger it, and how those factors affect his [or her] ability to work." *Stadler v. Barnhart*, 464 F. Supp. 2d 183, 188-89 (W.D.N.Y. 2006); *Welch v. Chater*, 923 F. Supp. 17, 21 (W.D.N.Y. 1996) ("Although a particular job may appear to involve little stress, it may, in fact, be stressful and beyond the capabilities of an individual with particular mental impairments.")). An ALJ must specifically inquire into and analyze a claimant's ability to manage stress. *Haymond v. Colvin*, No. 1:11-CV-0631 MAT, 2014 WL 2048172, at *9 (W.D.N.Y. May 19, 2014).

Nevertheless, "even without explicitly referencing a stress limitation, an RFC determination may adequately account for a claimant's stress-related limitations." *Herb v. Comm'r of Soc. Sec.*, 366 F. Supp. 3d 441, 447 (W.D.N.Y. 2019). That is, courts reviewing an ALJ's evaluation of stress-based limitations do not demand an exhaustive analysis of the issue. *See Slattery v. Colvin*, 111 F. Supp. 3d 360, 374 (W.D.N.Y. 2015). So long as the decision reveals that the ALJ considered and accounted for stress limitations—even if not in the most explicit terms—remand is not warranted. *See Herb*, 366 F. Supp. 3d at 447; *Grega v. Berryhill*, No. 17-CV-6596, 2019 WL 2610793, at *12 (W.D.N.Y. June 26, 2019).

In this case, it is evident that the ALJ considered and accounted for Vicanti's stress-related limitations. She cited and relied on Dr. Fabiano's and Dr. Dipeolu's opinions, both of which factored in Vacanti's stress, and she expressly included RFC restrictions that limited Vacanti to "low-stress" jobs. Tr. 18, 19, 20. This was enough to satisfy the ALJ's duty.[2] *See Alexandrea*

---

[2] Vacanti also argues that the ALJ's definition of low-stress jobs—*i.e.*, simple routine tasks and workplace decisions—was "totally unexplained." ECF No. 11-1 at 18. The Court disagrees. As discussed above, the restrictions are grounded in and supported by Dr. Fabiano's and Dr. Dipeolu's opinions. *See* Tr. 75-79, Tr. 530.

*R. R. v. Berryhill*, No. 18-CV-121, 2019 WL 2269854, at *7 (N.D.N.Y. May 28, 2019) (concluding that ALJ discharged her duty to consider stress-related limitations by "assessing a number of limitations in [the claimant's] ability to perform work-related mental tasks, and by including a number of specific restrictions in recognition of [the claimant's] ability to handle work-related stressors").

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 18) is GRANTED and Vacanti's Motion for Judgment on the Pleadings (ECF No. 11) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: February 19, 2020
      Rochester, New York

HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court